Good morning, Your Honors. May it please the Court, I'm Charles Markley, representing Shilo, the plaintiff in this case. Many times, damages in the context of insurance policies occur in an instant. We know exactly when they occurred. Traffic accidents, for example, we know precisely to the moment when the damage to the property occurred at the collision in the intersection. But the issue in this case is different. The issue in this case involves what many courts have called glacial damages. Damages... Or latent damages. Or latent damages? Excuse me? Latent, L-A-T-E-N-T. They could be latent damages, but... Well, that's important here, isn't it? Well... Because, just so I can focus, it's not an aggressive question. It's just I'm trying to understand your position. As I understand, a glacial is moving. Okay? It's in... It's a constant movement. Okay? Latent is something that may manifest itself, you know, months later after something happened, which sounds like the case here, because the act which caused the water migration into the walls and the like could only happen once water was placed in use. And so it wasn't as if they started something and then it was leaching immediately from the faulty joins. There was an intervening period of time. That's why I'm wondering about the word latent as opposed to glacial. Your Honor, I don't think latent is the exact term that we would use. It would be... I think glacial is appropriate. And that's because these are hotel rooms. And I think a jury would be permitted to find that the very first patron that went into that room took a shower. I agree with that. But when did that happen? When did the first patron get into the room? After the policy was terminated, isn't it? No, Paul, that's not correct. I think the first patron rented a room so that one could draw the inference.  But I think that the — it's a matter of common sense that when the contractor was finished with a particular block, they were released back to the public. So what does the record show? I just like to know. When does the record show that the first patron rented a room so that one can draw the inference? Your Honor, if it's in the record, I don't have it. But I think that the — it's a matter of common sense that when the contractor got finished, he washed the thing down, the janitors came in and cleaned the place up, and there was water in the tub surrounds. I'm not aware that any of that is in the record. But I think that this is imperceptible damage that occurs over a long period of time. Water intrusion is one. Corrosion is another one. If we pried this wall apart the day after the water intrusion began, what would we find? Maybe a little bit of moist wood. If we pried it apart a month later, a little more moist wood. If we pried it apart 10 years later, the wall would be crumbling apart. When did the damage occur? When did the damage begin? Okay. And I've been trying to sort out your theory of liability here. I understand that this arbitration was not based on this insurance policy that went forward on other issues, and you're trying to come within the policy. But I'm trying to understand what it is, what's the property damage that you are asserting happened during the policy period? The property — Shiloh's property, not property of anybody else. Correct. Okay. The policy does not cover property of the insured. It was the granite that was the property of the insured. Correct. But it was the sheetrock and the framing that was the property of Shiloh. The damage is the water intrusion and the resulting deterioration of those members, that is, the sheetrock and the framing behind there. Okay. Now, do you, under Oregon law, do you, and the insurance policy at issue here, do you agree that for you to win, you would have to establish that the wetness, the effect on the sheetrock had to happen during the course of the policy period? No, Your Honor. I think under Oregon law and established decisions of this Court, the damage occurred at the time of the negligent act. Okay. So just to pin that down. And then what you're saying is that it doesn't make any difference whether the rooms were rented at all to anybody during the policy period. After the policy was terminated and granite left the site, you could recover under Oregon law and the terms of this policy if the first shower that started, you know, actually introduced, let's assume that's the first opportunity for water to be introduced in the sheetrock, happened 24 months later. Is that correct? Well, yes, Your Honor. Okay. In a hotel, it's unlikely to happen. That's not my point, counsel. I'm trying to understand your legal argument. Yes, Your Honor. And the basis for that is under the St. Paul v. McCormick case.  That was a pollution case that occurred over a long period of time. And the same argument was put forward by the insurance company in that case. The time of an occurrence is not when the wrongful act was committed, but the time when the complaining third party, that's Shiloh in this case, was actually damaged. And so that's my question. Under that principle, when were you actually damaged if the water didn't hit the sheetrock until 24 months after the policy as a hypothetical? Your Honor, that was the argument made by the insurance company. The Supreme Court of Oregon said, quote, that argument is not well taken, end quote. They rejected that argument. This Court adopted in an Oregon case, the Interstate Fire v. Archdiocese case, that was an abuse case by the priests. This Court occurred, adopted the damage trigger in that molestation case. The damage trigger in that case was the exposure of the victim to the negligently supervised priest. It was the exposure to that. It was the negligent act because there wasn't any other date that they could put their finger on. Just like in this case, we can't put our finger on damage. We know that 10 years later it will be crumbling apart, but when before that 10 years period? If it is important to us, if I were to conclude that under the applicable Oregon law, you've got to show physical effect on the studs, on the sheetrock, on some part of the wall that you say belongs to your client before harm is suffered within the meaning of the policy, what's on the record that we have in front of us? What is the earliest date on which such physical effect took place? We don't have anything in the record that says the quantity or the timing of the damage to the sheetrock in those studs. We have nothing that I know of in the record. We have the expert, Steiner, look through the escutcheon plate where the showerhead comes out and through the escutcheon plate where the valve is and look inside there and see, and he says in his affidavit, in his declaration, yes, there is damage back behind there. We don't quantify it. We're not asking for any money for the damage. I think you answered my question. If the burden is on you to show actual physical effect, I don't really mean necessarily really bad damage, but even just moisture touching the wall, if that's necessary within the coverage period, I think June 1 is the end of the coverage period, you have nothing in the record that shows that, and is it your burden to show that if you have to show that? If that's a relevant consideration, I should say that. Not if we follow the St. Paul fire case, the interstate, the archdiocese case. But now you're arguing on a different theory of law. My theory of law for the purpose of the question is there has to be some physical harm to the wall within the coverage period. Yes. If it was water intrusion but there was stainless steel back there or something that would not cause any damage, yes, there would be no claim under this policy in that case. But common sense tells us that if there is water intrusion into a wood-framed building, there will be damage. No, I understand that. I'm just interested in terms of date. You cannot, or at least have not shown, that there has been any water intrusion prior to June 1. Not during the policy period. Correct. Nothing in the record on this. Okay. Well, then the repaired rooms weren't used. Say again. The repaired rooms were not used before that date. I thought you were suggesting that they were released in blocks. None of them were released then before June 1. When the contractor finished on a block of rooms, they were released to the public and he'd start on the next one, then start on the next one. Well. I'm not aware of the rental records during that period of time. It's our position that the damage occurred at the time of the negligent act. Okay. And that's what I'd like to bring you back to because the Supreme Court, in rejecting the insurer's argument, as you say, goes on to say, if there is a direct injury to or destruction of tangible property during the policy period, those words are unambiguous. If property, in this case the sheetrock, is injured during the policy period, there has been an occurrence and coverage under the policy is triggered. So now my question is, where is it in your theory that your property, Shiloh's property, was injured? What injured it? Your Honor, there is no particular date that anybody could find out in this case. If the insurance is not illusory in a water intrusion case, that is, if it actually means something or covers something. Counsel, that's why I gave you the 24-month hypothetical. And you said no. It was answered by the Darch Diocese case. But that's not what the language of the Supreme Court in Oregon seems to suggest. There has to be, and it was saying in that case, that it may, as you say, it's glacial. So I'm just trying to understand what it is about your case that makes this clearly within what the Oregon Supreme Court says, one way or the other. The Oregon Supreme Court has not addressed a water intrusion case, but the principle There has to be water. There has to, by your own analysis, there has to be water. Isn't that true? That's correct. Okay. So if you can't show that there was any water introduced into any of the rooms before the policy expired, would you agree that you would not have coverage? No, Your Honor. I would not agree with that. I would agree with the principle out of the Baugh construction case that this Court put forward, as well as the Darch Diocese case, that it's the time of the negligent act in a glacial type of damages, it's the time of the negligent act that occurs. In that case, that was a defective concrete that was poured in the upper floors of the building, floors 8 through 11. I'm sorry. What's the case? Pardon me? The name of the case. That was Baugh Construction. Baugh. B-A-U-G-H versus Mission Insurance. And the Court said, we hold that the damage to floors 8 through 11 was sustained during the alleged negligent construction of those floors, even though if you went and looked at those floors during the time, there wouldn't be anything wrong with those floors. I submit to the Court that this is no different than a personal injury action. It's the same standards under this policy, whether it's personal injury or property damage. If we would have had an intersection collision, the driver, the injured driver gets out, the plaintiff, let's call him. He appears to be uninjured at the time. He says he's uninjured. Doctors examine him and say, we don't see any injuries. The policy is terminated, let's say, the very next day. But weeks later, the injured party, the plaintiff, develops symptoms that the doctors can relate back to that. Today, Maryland would be saying, there was no manifestation of injury during the policy period, therefore there's no coverage. We know that won't work. We know that the cases don't work. In a way, the case hinges upon whether we use the concept of physical harm, in which case I think you lose, or defect, in which case I think you win. The question is whether there's defect or harm. That is to say, the defect was caused by, manufactured by, created by the contractor during the coverage period. It's just the physical harm doesn't take place until later. So the question is whether there's defect or harm that's the relevant concept. If it isn't manifested, you could say that it isn't there. But if it develops weeks later or months later, it's just a period of question of timing, and I believe that the situation is analogous. Okay, you're almost out of time. Let's hear from the other side, and we'll give you a moment to respond. May it please the Court, and good morning, Your Honors. Greg Baird for Maryland Casualty. This is a case of defective construction. As you are aware, the contractor who was Maryland's insured is Touchstone. Touchstone installed marble on bathtub surrounds. The claim in this case is that there is insurance for a judgment that was entered against Touchstone following an arbitration. So we have two issues in this case. What was the insured legally obligated to pay? And then after we determine what the facts were on what their obligation is, is there coverage for it? In terms of the legal obligation to pay, Maryland insured Touchstone and not Shiloh. This is a critical distinction because as a liability insurer of Touchstone, Maryland can only be obligated for that which Touchstone is found legally obligated to pay. So Shiloh can't come in and prove for the first time against Maryland that Shiloh believes it's damaged. It must prove that Touchstone owes the obligation. I'm losing. Say this again. This is a liability policy, Your Honor. I got that part. In order for coverage to be triggered, you will see in the coverage grant, the first requirement is that the insured becomes legally obligated to pay property damage caused by an occurrence during the policy period. So Touchstone must be obligated to Shiloh for Maryland to owe this. That's why it's important in cases involving a judgment to look at the basis for the judgment in determining whether or not coverage applies, not looking at facts in general. And under Oregon law, the basis for the judgment against the insured is the only thing that a judgment creditor can collect on because that's the only thing that Touchstone owes. So if Touchstone isn't legally obligated to pay Shiloh, in this case for water damage, then Maryland can't owe an indemnity obligation under the insurance policy. And where do we look to know exactly the basis then for the arbitration award? Does the arbitrator say, I'm awarding damages for physical harm to the wall and not awarding damages because of the defective workmanship? Your Honor, if you return to ER, I believe it's 39. Let me confirm that for you. No, that's incorrect. ER 69. ER 69. This is the written arbitration opinion where arbitrator's fear itemizes what the claims were. Okay, I'm with you. I'm sorry. What was the page again? 69, Your Honor. Okay. And as we go down in the second paragraph, we can see that Mr. Speer awards the cost to remove the old marble. And then he notes, although there was a claim for mold remediation, Shiloh has failed to prove that there was mold, so I deny that claim. Then the arbitrator goes on to the issue of water intrusion because there was a defense in that case that the arbitrator is discussing here that if there was water intrusion, Shiloh's delay in performing repairs was a defense that they had failed to mitigate. And Mr. Speer says, I needn't worry about that. Shiloh Inn has offered little evidence of the severity of water intrusion behind the granite. Mr. Grant also correctly points out that Shiloh has delayed repairs, possibly exacerbating the situation. However, there is little or no allowance in the damage claim for dry rot or damaged insulation. So no amount is awarded to repairing actual water damage. What we have is the award for the cost to remove the marble and put it back on. There was also claims for dry rot and damage to the tubs and lost income. And as you go down, Mr. Speer also rejects all of those consequential injury claims. In the next to last paragraph at the bottom of ER 69, the evidence does not satisfactorily establish how many tubs were damaged by Mr. Grant's people, nor how many will be damaged during repair. So this is a case of failure of proof at the arbitration. A claim was made that I have damage to my property behind the marble, but the arbitrator ruled against it. Thus, Touchstone is not legally obligated to pay for anything other than the cost to repair the marble. Also, there was a claim for lost income. That also was decided against Shiloh. In the last paragraph, the evidence does not show that Shiloh Inn will necessarily suffer any lost income during repairs. Are you taking the position that under Oregon law, there are no consequential damages permitted against Grant? No, Your Honor. We're taking the position that Grant was exposed to claims for consequential damages by Shiloh and the underlying arbitration, but that those claims were decided against Shiloh for lack of proof. And there's nothing in the policy that you offered insurance to Grant for defective workmanship and a requirement to replace things that were defectively done? Correct, Your Honor. Let me add another. And so damages, just to make sure I understand this, what the arbitrator calls ABCD, which is his assessment of damages for replacing, tearing out, replacing workmanship, and so on, you're saying that's all defective workmanship and we didn't cover that. And that was conceded before the district court on summary judgment, that the only amounts awarded were the cost to pull off the marble and put it back on, that nothing further was awarded to remediate any injury that resulted from a defective condition in the marble. So we have two layers here. We have the first layer is the arbitration in which the insured's exposure is determined in the underlying case. And then you have the effort as a judgment creditor to ask Maryland as the indemnitor of Grant to pay for that liability. In the first stage, touchdown was not found liable for consequential injury. To foreclose any argument that you can look beyond the arbitration award in the coverage action, my client put in evidence that, in fact, there was no water damage. We put in expert testimony that these conditions would not have had any consequential injury and that there was no way that consequential injury took place during the policy period. So what do you include within consequential damages? And what would have been consequential damages if not the repairs that were awarded? Judge Fisher, my understanding of consequential damages in this case is that there was three claims. One, that water damaged the substrate. So the water had some impact on the materials behind the marble. Two, it created a mold condition. Mold remediation can cause an increase in repair costs because you need to take safety concerns. And three, lost income. Those were the three consequential injury claims, all of which were denied by the arbitrator. And they were denominated as such? Correct. They're specifically addressed by the arbitrator in his written opinion? No, I'm looking at it. I'm trying to understand the extent to which one can say they are or are not consequential. But you're saying that had consequential damages been awarded by the arbitrator and had those consequential damages been suffered during the period of the policy, you would be responsible? Absolutely. That was conceded before the trial court. That is what this policy covers. But you're saying that that simply wasn't awarded, let alone during the policy period. It simply wasn't awarded. Correct. And we believe, with respect to the requirement that the damage be during the policy period, there are cases that hold in the context of a liability policy that it is the timing of the occurrence, i.e. the negligent act, that must be during the policy period. Those cases, however, are under insurance policies in which that's what it provides. So the policy covers property damage from an occurrence as long as the occurrence is during the policy period. The language here is that the bodily injury must be during the policy period. But if we were to agree with you that the only basis for an award against you is an award by the arbitrator and the arbitrator awarded nothing that's covered under the policy, the timing is neither here nor there. I agree, Your Honor. Okay. I got it. I agree. The point we are attempting to foreclose the idea that despite the fact that they weren't awarded against touchstone damages beyond just removing the insured's work, Shiloh continues to maintain in the declaratory action and now on appeal that there is some kind of water damage. We say there's no proof of that, and I don't believe the record reflects that. But even if there was water damage proved to you today and someone brought in a piece of substrate and you could look at it and you say it's discolored, it appears to be breaking down, there's no evidence in the record that my client covered that because our policy expired on June 1. With respect to the timing of when any water may have been introduced, Mr. Steiner was the representative for Shiloh. He testified as their corporate designee. His testimony was the rooms were rented after touchstone performed its work and after the contractor was hired to finish work. Touchstone walked off the job without finishing all the rooms. The rooms were rented after Rose City was done. That is long after the Maryland policy period. No evidence was submitted to the contrary. A room receipt. We had the actual, in discovery, we obtained the rental records. There was not a single rental record of any room that Shiloh worked on put into evidence showing that a room was rented or used during the Maryland policy period. With respect to what happened in the declaratory action on proof, your honors are aware now that it's my client's position that they are bound by the judgment. Even if Shiloh could go beyond the judgment and come into the declaratory action and prove water damage, they also failed to prove it before the trial court. ER 11, this is Judge Brown discussing the evidence presented to her on summary judgment. And she notes, the arbitrator also found the evidence did not establish the extent of any mold problem and there was little evidence of any water intrusion behind the granite. Shiloh did not agree with the statement that there was little evidence of water intrusion behind the granite but did not have any evidence itself of such water intrusion. That is the record before us today. And it's my client's position that this isn't a covered event. It's not an occurrence. It's not property damage. It didn't take place during the policy period. And it would otherwise be excluded, as we've included in our briefs. There are a number of exclusions you find in these policies for the insured's work. There's no question that the marble here is, in fact, the insured's work. And the only way that the your work exclusion does not control is if there's other damage. You know, I'm a little slow to come to the party here. Is there something in this case that tells us that the case against you is limited to recovery of the arbitration award or is the case broader than that damages including but not limited to the arbitration award? That is briefed in our materials, Your Honor. I'd also cite you to the Jarvis and Sen cases that are noted. Yeah, yeah, but what's your answer? The answer is that when a judgment creditor seeks to collect on a judgment, the judgment creditor can only pursue coverage for those matters that are proved in the underlying action. And does this suit, however, just to recover for the judgment against the insured? Yes. Okay. Yeah, my client only insured touchstone. And that's why I discussed at the beginning, Your Honor, that we're merely a liability insured touchstone. We didn't insure Shiloh directly. So for my client, Maryland, to owe anything, they have to prove that they made touchstone liable for it. Well, furthermore, it's a garnishment action, right? Correct, Your Honor. All right. Which then limits it to the judgment. Okay. Yes. The rules for garnishment and judgment creditors are the same in Oregon. The case law is treated in similarly. If Your Honors have no further questions, I thank you for your time. Okay. Would you like a minute? Very quickly, the award for the arbitrator was not just for pulling off the granite. The record clearly shows that the only way to pull the granite off is to use a sledgehammer on it, which will ruin the sheetrock behind there. It's therefore, in pulling off the granite, you are also going to have to pull off property of Shiloh, not property that was furnished by the insured. There's conflicting evidence concerning the damage in this case. While Mr. Wallace says, from reviewing the written record in the arbitration, not the oral proceedings, but the written record in the arbitration, a flawed analysis, he says there's no evidence of damage. That, I submit to the Court, is not a well-based opinion. But Mr. Steiner at ER62 says there is damage. He can't quantify it, but there is damage back behind those panels. Okay. Thank you very much. I thank both sides for their arguments. And Shiloh Inn v. Grant and Merlin Casualty Company has now submitted for decision. The next case on the argument panel is Dawson v. EnTech International.
judges: Bury, Fletcher W. , Fisher